IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WILLIAM J. EINHORN, administrator of the TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA & VICINITY | : | HON. JEROME B. SIMANDLE |
| | : | Civil No. 11-1451 (JBS/AMD) |
| Plaintiff, | : | **OPINION** |
| v. | : | |
| TWENTIETH CENTURY REFUSE REMOVAL COMPANY, et al., | : | |
| Defendants. | : | |

APPEARANCES:

Jo Bennett, Esq.
Frank C. Sabatino, Esq.
STEVENS & LEE, PC
1818 Market Street, 29th Floor
Philadelphia, PA 19103
    Counsel for Plaintiff

John A. Adams, Esq.
SUSANIN, WIDMAN & BRENNAN, P.C.
455 S. Gulph Road, Suite 240
King of Prussia, PA 19406
    Counsel for Defendants James F. Anthony, III and James F.
    Anthony, IV

**SIMANDLE**, District Judge:

# I.   INTRODUCTION

This matter is before the Court on the motions of Defendants James F. Anthony, III and James F. Anthony, IV to dismiss for failure to state a claim upon which relief can be granted. [Docket Items 6 & 9.]  Plaintiff in this matter is William J. Einhorn, administrator of the Teamsters Pension Trust Fund of

Philadelphia & Vicinity.  Plaintiff seeks to recover withdrawal
liability assessed pursuant to ERISA and the Multi-Employer
Pension Plan Amendment Act of 1980 ("MPPAA"), 29 U.S.C. § 1381 et
seq. from Defendant Twentieth Century Refuse Removal Company
("20th Century Refuse") as well as the Moving Defendants Anthony
III and Anthony IV.  This motion requires the Court to determine
three questions: first, whether Plaintiff can seek recovery of
assets transferred from 20th Century Refuse to the Moving
Defendants despite the fact that the Moving Defendants are not
alleged to have been "employers" within the meaning of the MPPAA;
second, whether funds that could have been used to pay assessed
withdrawal liability are "plan assets" within the meaning of the
MPPAA; and third, whether Plaintiff sufficiently pleads a cause
of action or a remedy for equitable relief in Count IV of the
Amended Complaint.  For the reasons explained below, the Court
will grant in part and deny in part Defendants' motions to
dismiss.

## II.  BACKGROUND

The facts set forth here are those alleged in the Amended
Complaint which the Court must accept as true for purposes of a
Rule 12(b)(6) motion.  Plaintiff in this matter is the
administrator and fiduciary of the Teamsters Pension Trust Fund
of Philadelphia & Vicinity, which is alleged to be a

2

multiemployer pension plan within the meaning of 29 U.S.C. §
1002(2)(A),(37).  Am. Compl. ¶¶ 3-4.

     Plaintiff alleges that Defendant 20th Century Refuse was
formerly a party to a series of successive collective bargaining
agreements that obligated the company to make monthly
contributions to the Pension Fund on behalf of its employees.
Id. ¶¶ 9-10.  The withdrawal liability at issue in this matter
arises from the sale of substantially all of Defendant 20th
Century Refuse's assets to non-party Waste Management on
September 30, 2009, resulting in a "complete withdrawal" from the
Pension Plan.  Id. ¶¶ 11-18.  This withdrawal allegedly triggered
MPPAA withdrawal liability under 29 U.S.C. § 1381(a) in the
amount of $489,503.78.  Id. ¶ 20-21. Plaintiff further alleges
that, by not responding to proper notice of this assessed
liability, 20th Century Refuse has waived its right to challenge
the assessment of this liability, and, having failed to make any
payments on the liability is currently in default under §
1399(c)(2),(5).  Id. ¶¶ 22-25.  No portion of the withdrawal
liability has been paid to the Pension Fund, by 20th Century
Refuse or any other party.  Id. ¶ 33.

     Plaintiff further alleges that Defendant James Anthony III
is "a principal owner" of 20th Century Refuse, and Defendant
James Anthony IV is "an owner" of 20th Century Refuse.  Id. ¶¶ 7-
8.  On September 2, 2009, Anthony III and Anthony IV signed, as

3

"owners" (and which Anthony III signed as President) a letter of intent spelling out the details of the sale of 20th Century Refuse to Waste Management.  Am. Compl. Ex. A.  On September 30, 2009, Plaintiff William Einhorn sent 20th Century Refuse a request for information and notice regarding possible withdrawal liability arising from the sale of the company's assets.  Am. Compl. Ex. B.  On December 10, 2009, Plaintiff sent a letter to 20th Century Refuse notifying it of the assessed withdrawal liability of $489,503.78.  Am. Compl. Ex. C.

Plaintiff further alleges that at the time that 20th Century Refuse withdrew from the Pension Fund, it "had assets that should have been used to pay some or all of the withdrawal liability" which came from the sale to Waste Management.  Am. Compl. ¶ 40. The Moving Defendants knew or had notice of the company's obligation to pay the withdrawal liability.  Id. ¶ 41.

Plaintiff alleges that Defendants converted the assets of 20th Century Refuse to their own use, and have "used for their own benefit assets of 20th Century Refuse that should have been used to pay the withdrawal liability owed the Pension Fund."  Id. ¶¶ 34, 42.  Specifically, Plaintiff alleges that the Moving Defendants "engaged in a series of transactions to divest 20th Century Refuse" of assets to pay the withdrawal liability, which "included transferring the Assets to their own use, erroneously representing that 20th Century Refuse had no money to pay the

4

withdrawal liability, and failing to respond to the Pension Fund's efforts to collect the withdrawal liability." Id. ¶ 43.

On March 15, 2011, Plaintiff filed his original Complaint in this matter, naming a collection of corporate defendants affiliated with 20th Century Refuse, and James F. Anthony III, individually. [Docket Item 1.]  Service was effected on April 14, 2011. [Docket Item 3.]  On May 24, 2011, Defendant Anthony III filed a motion to dismiss for failure to state a claim. [Docket Item 6.]  On June 15, 2011, Plaintiff filed his Amended Complaint, adding as Defendant James F. Anthony IV. [Docket Item 8.]  On June 29, 2011, Defendants Anthony III and Anthony IV filed the instant motion to dismiss. [Docket Item 9.]  Defendant 20th Century Refuse has not entered an appearance in this matter or filed any responsive pleading, and, on September 23, 2011, the Clerk of Court entered default against it pursuant to Rule 55(a), Fed. R. Civ. P.  As Defendant Anthony III's initial motion to dismiss [Docket Item 3] sought to dismiss Plaintiff's no-longer-operative initial Complaint, the Court will deny this motion as moot.

Plaintiff seeks recovery in the currently operative Amended Complaint in four Counts.  Count I seeks recovery of the assessed withdrawal liability from 20th Century Refuse pursuant to 29 U.S.C. § 1381(a).  Am. Compl. ¶¶ 19-25.  Count II seeks recovery of the assessed withdrawal liability from Defendants Anthony III

and Anthony IV on a theory of breach of fiduciary duty.  <u>Id.</u> ¶¶
26-38.  Count III seeks recovery of assets from Anthony III and
Anthony IV under 29 U.S.C. § 1392(c) for funds transferred from
20th Century Refuse to the Moving Defendants, with the intent to
avoid or evade withdrawal liability.  <u>Id.</u> ¶¶ 39-44.  Count IV
seeks recovery of the identified assets under the equitable
theories of constructive trust and equitable subrogation.  <u>Id.</u> ¶¶
45-49.  Defendants Anthony III and Anthony IV move to dismiss
Counts II, III and IV.


**III. DISCUSSION**

    **A.  Standard of Review**

In order to give defendant fair notice, and to permit early
dismissal if the complained-of conduct does not provide adequate
grounds for the cause of action alleged, a complaint must allege,
in more than legal boilerplate, those facts about the conduct of
each defendant giving rise to liability.  <u>Bell Atlantic Corp. v.
Twombly</u>, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a) and
11(b)(3).  These factual allegations must present a plausible
basis for relief (i.e., something more than the mere possibility
of legal misconduct).  <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937,
1951 (2009).   In its review of a motion to dismiss pursuant to
Rule 12(b)(6), Fed. R. Civ. P., the Court must "accept all
factual allegations as true and construe the complaint in the

light most favorable to the plaintiff." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S.Ct. at 1949.

The Court, in evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, may consider the complaint, exhibits attached thereto, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

**B. Analysis**

   1. Evade/Avoid Liability under 29 U.S.C. § 1392(c)

The Court first turns to Plaintiff's Third Count, which seeks recovery from the Moving Defendants on a theory that the funds they allegedly transferred to themselves from 20th Century Refuse intending to evade or avoid withdrawal liability can be recovered under § 1392(c). Defendants argue that the Court must dismiss this Count because the statute only permits recovery of withdrawal liability from "employers," which Plaintiff has not alleged the Moving Defendants are, under a theory of either alter ego or piercing the corporate veil.

7

The statute sets out the authority of a fund such as Plaintiff's Fund to recover withdrawal liability in Part I of the MPPAA. The statute provides that "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." 29 U.S.C. § 1381(a) (emphasis added). A later section of this part of the statute sets out liability for "transactions to evade or avoid liability." "If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction." 29 U.S.C. § 1392(c).

The Third Circuit has previously applied this section of the MPPAA to set aside agreements between the contributing (and withdrawing) employer and unions when such agreements were designed to avoid incurring withdrawal liability, thereby permitting the injured pension fund to recover withdrawal liability from the employer despite the agreement. See SUPERVALU, Inc. v. Board of Trustees of the Southwestern Pennsylvania and Western Maryland Area Teamsters and Employers Pension Fund, 500 F.3d 334, 340-41 (3d Cir. 2007) ("Under a plain language statutory reading the provision applies when a contributing employer enters a transaction with a principal purpose of escaping its duty to pay withdrawal liability to the

plan or fund."). The Third Circuit has not, however, considered whether § 1392(c) permits recovery from defendants other than the withdrawing employer.

Defendants argue that any recovery under § 1392(c) must be limited by § 1381(a) to permit recovery <u>only</u> from an employer. In support of this position, Defendants cite to <u>IUE AFL-CIO Pension Fund v. Locke Machine Co.</u>, 726 F. Supp. 561 (D.N.J. 1989), which held that a pension fund could not recover withdrawal liability under § 1392(c) from shareholders that were not alleged to be "employers" under a theory of alter ego or piercing the corporate veil.

> [W]hether or not the ERISA definition of 'employer' includes individual shareholders of a corporation, the principle of limited corporate liability prevents the plaintiff from proceeding against shareholders for delinquent contributions or withdrawal liability unless there is some reason to disregard the corporate form.

<u>Id.</u> at 569. The <u>Locke Machine</u> court interpreted the MPPAA to permit recovery "only against an 'employer'", even via § 1392(c) for transactions to a non-employer party that were intended to evade or avoid withdrawal liability. <u>Id.</u> at 570.

In the absence of any controlling Third Circuit precedent on the question, the Court looks to the decisions of other circuit courts for persuasive authority. The only circuit court to have considered the question is the Second Circuit, which has held that § 1392(c) permits a fund to pursue funds transferred to non-

9

employers, provided that the transfer was made by the employer
intending to evade or avoid incurring withdrawal liability.  IUE
AFL-CIO Pension Fund v. Hermann, 9 F.3d 1049, 1056 (2d Cir.
1993).

> [I]f a pension fund . . . is adversely
> affected by the acts of any party who has
> attempted to 'evade or avoid liability' under
> the MPPAA . . . then the MPPAA shall be
> applied 'without regard to such transaction .
> . . any assets that were transferred in order
> to 'evade or avoid liability,' as well as the
> parties to whom they were improperly
> transferred, must be within the reach of the
> statute . . . . Those assets must therefore be
> recoverable from the parties to whom they have
> been illegitimately transferred.

Id.

This reasoning is persuasive.  The Court concludes that
nothing in the text of the MPPAA statute would appear to limit
recovery of the allegedly transferred funds from the Moving
Defendants, regardless of whether they are alleged to have been
'employers.'  The Court is not persuaded by the reasoning of the
Locke Machine court, which appears to have read a limitation into
§ 1381(a) that is not present in the text of the statute.
Section 1381(a) merely permits the proper plaintiff to pursue an
employer for withdrawal liability directly, but is silent on the
issue of whether such funds can be pursued from other parties
under a different cause of action, such as that in § 1392(c).

The Court has found no other district court to have
interpreted the statute in the limited way urged by Defendants;

every other court to have considered the issue has recognized
that, to give meaning to § 1392(c), a fund must be able to pursue
the transferred assets from the transferee as well as the
employer/transferor.  See e.g. UNITE National Retirement Fund v.
Rosal, Civ. No. 07-0773, 2009 WL 3241660 at *7 (E.D. Pa., Oct. 1,
2009) (denying summary judgment motion by individual defendants
against claim to recover funds transferred upon evidence that
funds were transferred with intent to evade or avoid withdrawal
liability under § 1392(c)); Central States, Southeast and
Southwest Areas Pension Fund v. Denny, 250 F. Supp. 2d 948, 953
(N.D. Ill. 2003) ("[l]iability here can therefore extend to
[individual] Defendants if a principal purpose of the
[transaction] was to evade or avoid liability."); Connors v.
Marontha Coal Co., Inc., 670 F. Supp. 45, 46-47 (D.D.C. 1987)
("[w]henever a transaction has removed assets from the formal
structure of the corporation being assessed for withdrawal
liability, liability can only be 'collected' if there is a right
of action against the transferee, whether or not it fits the
definition of 'employer'").

The Court finds, upon consideration of the language of the
statute and the weight of authority considering the issue, that §
1392(c) permits Plaintiff to pursue transferred funds intending
to evade or avoid withdrawal liability, even from defendants that
are not alleged to be employers under MPPAA.  Congress, by

11

enacting the MPPAA, made a policy determination that employers bear an obligation to their employees to ensure that the pensions promised to those employees would not be rendered illusory by the insolvency of the pension plan caused by the employer's withdrawal from the plan. Connolly v. Pension Benefit Guaranty Corp., 475 U.S. 211, 215 (1986). The employer is therefore able to compensate its employees marginally less in salary in exchange for the security these employees gain by knowing that their promised pensions will be secure. As a result, Defendant 20th Century Refuse has economically benefitted from this statutory structure during the time that is has been contributing to the Fund. If, in an attempt to avoid meeting its statutory obligation to its employees, 20th Century Refuse has transferred these economic benefits to the Anthony Defendants, the Court is permitted to set that transaction aside, and those assets are recoverable by the Fund, under § 1392(c). Consequently, the Court will deny Defendants' motion to dismiss as to Count III.

   2. Breach of Fiduciary Duty

  In addition to seeking recovery of assets transferred to the Moving Defendants from 20th Century Refuse, Plaintiff also seeks to recover the withdrawal liability from the Moving Defendants on a theory of breach of fiduciary duty. Under ERISA, a fiduciary of a covered plan can be held personally liable for losses to the plan caused by a breach of the fiduciary's duties. 29 U.S.C. §

1109(a).  The Third Circuit has defined a "fiduciary" under ERISA as a person who, among other things, "exercises any authority or control respecting management or disposition of [plan] assets." Board of Trustees of Bricklayers & Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Assoc., Inc., 237 F.3d 270, 275 (3d Cir. 2001) (quoting 29 U.S.C. § 1002(21)(A)(i)). Defendants move to dismiss the claim for breach of fiduciary duty on the ground that Plaintiff cannot allege that either Moving Defendant exercised authority or control over any plan asset.

Plaintiff alleges that the Moving Defendants exercised discretionary authority over monies that should have been used to pay withdrawal liability, which Plaintiff further argues constitutes "plan assets" of the Pension Fund.  Am. Compl. ¶¶ 34-36.  Plaintiff therefore argues that the Moving Defendants breached their fiduciary duties to the Fund under ERISA. Defendants argue that the withdrawal liability assets over which Plaintiff alleges the Moving Defendants exercised control are not "plan assets" under ERISA, and that the Moving Defendants are therefore not "fiduciaries" as a matter of law.  The question before the Court is therefore whether the assessed withdrawal liability in this case constituted a "plan asset" under ERISA.

The Court begins by reiterating that it is only bound to accept as true factual allegations, but not legal conclusions. Iqbal, 129 S.Ct. at 1949.  Thus, Plaintiff's allegation that, by

13

failing to pay the assessed withdrawal liability, the Moving Defendants "have taken custody of 'plan assets' of the Pension Fund and have, therefore, become fiduciaries of the Pension Fund" is not entitled to the presumption of truth on a Rule 12(b)(6) motion.  Am. Compl. ¶ 36.

The Court, following the parties' lead, will analyze whether withdrawal liability constitutes a plan asset first as a matter of law, and second as a matter of contract.

a.  Plan assets as a matter of law

The Third Circuit has not addressed whether assets that could be used to pay assessed withdrawal liability constitute plan assets under ERISA.  However, the Circuit has, helpfully, noted that the term "plan assets" under ERISA can refer to more than simply assets that have been deposited into a qualified benefit plan.  Bottle Beer Drivers, Warehousemen & Helpers Teamsters Local 843 v. Anheuser Busch, Inc., 96 F. App'x 831, 835 (3d Cir. 2004) ("funds may, in some cases, be plan assets before they are actually deposited into the benefit plans").  Thus, that the assets that Plaintiff identifies had not yet been paid to the Fund does not decide the question.

While the statute itself provides a definition of "plan assets", the definition is not helpful in this context, except to the extent that it authorizes the Secretary of Labor to define

the term by regulation.  See 29 U.S.C. § 1002(42).[1]  No
regulation explicitly confronts whether unpaid withdrawal
liability might constitute plan assets.[2]  The Department of Labor
has issued advisory opinions stating that, absent an applicable
regulation, "plan assets" are defined according to "ordinary
notions of property rights under non-ERISA law," which "include
any property, tangible or intangible, in which the plan has a
beneficial ownership interest," considering "any contract or
other legal instrument involving the plan, as well as the actions
and representations of the parties involved."  Faber v.
Metropolitan Life Ins. Co., 648 F.3d 98, 106 (2d Cir. 2011)
(quoting U.S. Dep't of Labor, Advisory Op. No. 93-14A, 1993 WL
188473 at *4 (May 5, 1993) (finding that interest generated from
plan assets held by insurance company does not constitute plan
assets because plan and beneficiaries had no "ownership interest"
in such additional funds).

The question on this point is thus whether the Fund had an
"ownership interest" in the money in possession of 20th Century
Refuse that could have been used to pay withdrawal liability at

---

[1] Section 1002(42) states that "the term 'plan assets' means
plan assets as defined by such regulations as the Secretary may
prescribe" and provides various exceptions not applicable here.
29 U.S.C. § 1002(42).

[2] However, see 29 C.F.R. § 2510.3-102(a) (defining plan
assets to include employee contributions to qualified plan that
were withheld by the employer from the employee paycheck to be
plan assets).

the time Defendants are alleged to have exercised control over
it.  In general terms, withdrawal liability under MPPAA
represents the withdrawing employer's "proportional share of the
plan's unfunded benefit obligations", In re Marcal Paper Mills,
Inc., 650 F.3d 311, 316 (3d Cir. 2011), which is "based largely
on the withdrawing employer's contribution history over the five
. . . years preceding the withdrawal." Id. at 317 (quoting
CenTra, Inc. v. Cent. States Se. & Sw. Areas Pension Fund, 578
F.3d 592, 599-600 (7th Cir. 2009).

Plaintiff offers two justifications for finding that
withheld withdrawal liability constitutes plan assets as a matter
of law.  First, Plaintiff cites to the case of Schaffer v.
Charles Benjamin, Inc., Civ. Nos. 90-6225, 91-6954, 1992 WL 59152
at *8 (E.D. Pa. Mar. 18, 1992) for the proposition that corporate
assets diverted from the payment of an adjudicated withdrawal
liability constitutes plan assets.  In Schaffer, the district
court held a bench trial in which it found joint and several
liability for withdrawal liability among, inter alia, the
withdrawing employer corporation and the two individual corporate
officers/owners.  The court found liability on several grounds,
including via piercing the corporate veil to find that the
individual owners could be reached for the employer's direct
liability.  Id. at *6-7.  Additionally, the court found that the
individual defendants could be declared constructive trustees of

16

the assets of the corporation, and that, therefore, their use of corporate assets for personal reasons constituted a breach of fiduciary duty to the trust.  <u>Id.</u> at *8-10.

Defendants respond that Plaintiff reads too much into <u>Schaffer</u>, pointing out that the <u>Schaffer</u> court never expressly held that corporate assets which could be used to pay withdrawal liability constitute plan assets.  The Court agrees.  The Court finds that the <u>Schaffer</u> court merely assumed, without explicitly deciding, that the individual defendants were "fiduciaries" of the pension fund.  The decision did not consider whether withdrawal liability constituted a plan asset, or explain under what theory the individual defendants (Mr. Benjamin and Ms. Benjamin) could be considered fiduciaries.

> Benjamin, Inc. has been adjudged to owe withdrawal liability to the plaintiff. Nevertheless, Mr. Benjamin and Ms. Benjamin have transferred funds from the corporations . . . for their own personal use. The imposition of a constructive trust would deny Mr. Benjamin and Ms. Benjamin, who are fiduciaries of the Pension Fund, the ability to refuse to remedy the withdrawal liability of Benjamin, Inc.

<u>Id.</u> at *8.  The Court interprets this section of the <u>Schaffer</u> decision to state merely that when a fiduciary appropriates assets belonging to beneficiaries for his or her personal use, the fiduciary has breached his or her duty and that a constructive trust is therefore an appropriate remedy.  <u>Schaffer</u> does not address the question of how the court determined the

individual owners were fiduciaries, and, as that is the question before this Court, the case is of limited use here.

To the extent that the Schaffer decision can be interpreted to hold that corporate officers of an employer that has been assessed withdrawal liability can be held liable for breach of fiduciary duty merely by exercising control over company assets not immediately paid to the assessing pension fund, the Court finds the holding to be unpersuasive.  The result of such a holding would be that a beneficiary of an ERISA plan, or the fund itself, would have an automatic claim for breach of fiduciary duty whenever an employer contests (and refuses to immediately pay) the assessment of withdrawal liability.  The Court therefore cannot conclude, on the basis of Schaffer, that withdrawal liability constitutes a plan asset under ERISA as a matter of law.

Plaintiff's second argument for determining unpaid withdrawal liability to be "plan assets" under ERISA is by analogy to withheld employee contributions under ERISA.  As stated in 29 C.F.R. § 2510.3-102(a) and recognized in several Circuit Court opinions, funds that were withheld from employee paychecks for the purpose of paying pension plan contributions constitute plan assets for the purpose of determining fiduciary duties under ERISA.  See, e.g. United States v. Whiting, 471 F.3d 792, 799-800 (7th Cir. 2006) ("[o]nce the contributions are

18

withheld, the money no longer belongs to the company; rather, the funds belong to the employees. Therefore, employees have a present interest in the funds.").

Plaintiff argues that 20th Century Refuse's withdrawal liability, like withheld employee contributions, should be deemed plan assets.  Plaintiff argues that, according to the logic of the recent Third Circuit case of In re Marcal Paper Mills, Inc., 650 F.3d 311 (3d Cir. 2011), the Court should conclude that the beneficiaries and Fund had a vested ownership interest in 20th Century Refuse's assessed withdrawal liability.  In Marcal, the Third Circuit concluded that an employer's withdrawal liability represents a debt owed by the employer to the beneficiaries of the fund "in fulfillment of the promise . . . to provide pension benefits in consideration for . . . [the employee-beneficiary's] work."  Marcal, 650 F.3d at 317.  Put another way, the Marcal court stated that

> unfunded vested benefits from which withdrawal
> liability is calculated are benefits which are
> promised and earned but not yet funded as of
> the calculation day.  The liability for
> unfunded vested benefits represents a
> pre-existing obligation on the employer's
> part, and is not simply 'incurred' as of the
> date of withdrawal.

Id. at 318 (quoting Huber v. Casablanca Indus. Inc., 916 F.2d 85, 96 (3d Cir. 1990) (internal punctuation and quotation marks omitted)).  Therefore, Plaintiff argues, the Fund had an accrued, vested ownership interest (on behalf of the Fund's beneficiaries)

19

to 20th Century Refuse's assessed withdrawal liability, an interest which pre-existed 20th Century Refuse's withdrawal from the Plan, and that therefore the Moving Defendants' exercise of control over company assets which could have satisfied this obligation constituted a breach of fiduciary duty within the meaning of ERISA.

Defendants respond that Plaintiff's analogy to employee contributions is not reasonable because Marcal did not hold that the withdrawal liability vested as the employees hours were worked.  The Court agrees.  The Marcal court confronted a different factual and legal situation from the instant one, namely, whether assessed withdrawal liability of an employer who had declared bankruptcy could be apportioned to pre- and post-petition amounts.  The court concluded that it could, reasoning that, once the employer withdrew from the pension fund (several months after petitioning for bankruptcy protection), the assessed withdrawal liability could be determined to represent some portion of benefits earned by employees before and some portion earned after the time when the employer filed its bankruptcy petition.  Id. at 320.  Thus, at most, Marcal held that once an employer withdraws pursuant to the MPPAA, the assessed withdrawal liability can be attributed to different time periods, but does not indicate that the employer's withdrawal liability debt vests or is automatically due and owing as each employee hour is

20

worked.  It could not be otherwise, in fact, because an employer that never withdraws from a plan will, pursuant to the MPPAA, never be required to pay such liability.

The Court finds support in this conclusion by reference to the non-precedential Third Circuit opinion of <u>Bottle Beer Drives, Warehousemen & Helpers Teamsters Local 483 v. Anheuser Busch Inc.</u>, 96 F. App'x 831, 834-36 (3d Cir. 2004).  In <u>Anheuser Busch</u>, the employer was alleged to have breached a fiduciary duty by keeping payments made to the employer from the union rather than depositing such payments in the employee pension fund.  The union paid the employer for loaning to the union employees on leave from the employer, and the amount paid was equal to (and calculated to equate to) the estimated cost of providing pension benefits for the employees on loan.  <u>Id.</u> at 834.

The court concluded that, in the absence of a contractual obligation on the part of the employer to remit such specific payments to the pension fund, the union payments did not automatically convert into employee contributions (and therefore "plan assets") when they were paid to the employer, even though the employer would, eventually, be required to pay the employee benefits that the loaned employees were earning.  The employer only would become a fiduciary under these conditions, the panel reasoned, were it or the union contractually obligated to remit such payments to the fund at the time the payments were made.

21

Applying the same principle to the instant matter, the Court concludes that 20th Century Refuse's withdrawal liability debt did not automatically vest or otherwise transform into plan assets as the employee hours were worked.

The Court therefore concludes that 20th Century Refuse's withdrawal liability was not vested prior to assessment in the way that an employee contribution withheld from the employee's paycheck is.  Therefore, absent an agreement among the parties defining the company's withdrawal liability as a plan asset due and owing at a particular time prior to the Moving Defendant's alleged disposition of it, the Court cannot find that the assessed withdrawal liability was a plan asset as a matter of law.

b.  Plan assets as defined by agreement

Plaintiff additionally argues that the Fund's Amended and Restated Agreement and Declaration of Trust dated July 1, 2000 (the "Pension Trust Agreement") defines unpaid withdrawal liability as a "plan asset" sufficient to render the Moving Defendants as fiduciaries over such assets.  Plaintiff attaches the Pension Trust Agreement to the Amended Complaint.  Am. Comp. Ex. D.  Defendants do not dispute that if there were a valid agreement binding on the parties that treated withdrawal liability as a plan asset, such an agreement would suffice to create a fiduciary duty over the assets.

However, Defendants respond that the Pension Trust Agreement fails to transform the unpaid withdrawal liability into plan assets for two reasons.  First, Defendants argue that, as non-parties to the Pension Trust Agreement, they are not bound by its terms.  Second, Defendants argue that the terms of the Pension Trust Agreement do not contemplate treating unpaid withdrawal liability as a plan asset.

The Court need not determine whether the Pension Trust Agreement is binding on the Moving Defendants because it concludes that, even if it were binding on Defendants, an interpretation of the Agreement treating withdrawal liability as a plan asset would be arbitrary and capricious.[3]

Plaintiff argues that withdrawal liability is to be treated as a plan asset under the Trust Agreement by reference to two different sections.  First, Plaintiff points to Article I, Section 10, which defines the term "CONTRIBUTIONS."  Am. Compl. Ex. D at 4.  The term is defined as meaning "the money paid into the PENSION FUND by a COVERED EMPLOYER or contributions or withdrawal liability owed to the PENSION FUND from a COVERED EMPLOYER."  Id. (capitalization original).  Thus, Plaintiff

---

[3] Plaintiff argues that the Court should defer to the Fund's interpretation of the Pension Trust Agreement unless such interpretation is arbitrary and capricious, pursuant to Art. IV, Sec. 1(s) of the Agreement.  Defendants do not dispute Plaintiff's claim to such discretion, and the Court will, therefore, apply an "arbitrary and capricious" standard of review to Plaintiff's interpretation.

argues, the identified section defines "CONTRIBUTIONS" as
"withdrawal liability."

Then, Plaintiff turns to Article VI, Section 5.  Article IV
is titled "Contributions or Payments to the Pension Fund" and
Section 5 states:

> As each hour is worked and/or paid for which
> contributions are payable to the PENSION FUND,
> the payment of contributions due from the
> COVERED EMPLOYER to the PENSION FUND accrues
> and shall be considered as being as held in
> trust by the COVERED EMPLOYER for the benefit
> of the PENSION FUND to whom such trust money
> is due and payable.

Am. Compl. Ex. D at 15. (capitalization original).  Thus,
Plaintiff argues, because "withdrawal liability" is defined as a
"CONTRIBUTION" under Art. I Sec. 10, and "the payment of
contributions due from the COVERED EMPLOYER to the PENSION FUND
accrues and shall be considered as being as held in trust by the
COVERED EMPLOYER for the benefit of the PENSION FUND" pursuant to
Art. VI Sec. 5, the Court should conclude that the Trust
Agreement establishes that withdrawal liability is a plan asset.

Defendants object to this interpretation by concluding that
Art. VI Sec. 5 unambiguously refers only to employee
contributions themselves, not to the employer's withdrawal
liability.  Defendants argue that this can be seen in two ways.
First, Defendants look at the language of Art. VI Sec. 5 itself,
which states that contributions become due and owing to the Fund
"[a]s each hour is worked and/or paid for" which Defendants argue

24

is clearly a reference to employee plan contributions alone
rather than withdrawal liability, as withdrawal liability is not
paid to the fund on an ongoing basis as each employee hour is
paid.

Second, Defendants point out that the definition in Art. I
Sec. 10 which equated withdrawal liability with "CONTRIBUTIONS"
is clearly a reference to a specialized term, distinct from
"contributions" in lower-case letters.  Defendants point out that
the grammatical structure of this definition equates the defined
term "CONTRIBUTIONS" with three things: (1) money paid to the
PENSION FUND, (2) "contributions" (uncapitalized), and (3)
withdrawal liability.  As a result, Defendants argue, the
definition clearly and unambiguously treats the uncapitalized
"contributions" as distinct from withdrawal liability, and only
suggests that withdrawal liability is a component of
"CONTRIBUTIONS".  Thus, Defendants argue, because Art. VI Sec. 5
only states that (lower-case) "contributions" are due and owing
after each hour is worked, the only reasonable interpretation of
the two sections must be that Art. VI Sec. 5 is referring only to
the generalized form of "contributions" which is established as
distinct from "withdrawal liability" in Art. I Sec. 10.

Plaintiff responds only to the first of Defendants'
arguments on this point, arguing that, under Marcal, as discussed
above, the Third Circuit recognized that withdrawal liability is

calculated, in part, based on the hours worked by the employee beneficiaries under the plan.  Plaintiff therefore reasons that the language of Art. VI Sec. 5 describing contributions in this way is not necessarily inconsistent with interpreting the provision to include withdrawal liability.

Plaintiff does not, however, respond at all to Defendants' contract interpretation argument distinguishing the defined term "CONTRIBUTIONS" from the general term "contributions" and the fact that the latter term is used disjunctively from "withdrawal liability" in the definitions section.  The Court agrees that Art. I Sec. 10 must be read to distinguish withdrawal liability from the general term of "contributions", and Plaintiff offers no interpretation of the terms of the Agreement that would explain why the Court should disregard this distinction.  Thus, the Court must conclude that interpreting Art. VI Sec. 5 in a way that conflicts with Art. I Sec. 10 would be arbitrary and capricious.  Consequently, the Court finds no contractual provision establishing that withdrawal liability constitutes plan assets.

The Court will, therefore, grant Defendants' motion to dismiss Count II of the Amended Complaint for failure to state a claim, as Plaintiff cannot allege that Defendants were fiduciaries under ERISA.

       3.  <u>Claim for Equitable Relief</u>

Finally, Defendants move for dismissal of Plaintiff's Fourth

26

Count, a claim for equitable subrogation and constructive trust.
Defendants argue that the Count should be dismissed for two
reasons.  First, because ERISA does not create an independent
cause of action for equitable relief absent some other violation
of the statute, and second because Plaintiff fails to adequately
plead the necessary elements for either the imposition of a
constructive trust or equitable subrogation.

As to the first argument, Plaintiff responds that the
Supreme Court decision Sereboff v. Mid-Atlantic Servs., Inc., 547
U.S. 356 (2006) recognizes an independent cause of action for a
fiduciary (such as Plaintiff) to obtain equitable relief for a
violation of ERISA or to enforce the terms of a Pension Plan
under 29 U.S.C. § 1132(a)(3).  Plaintiff further argues that he
has adequately alleged that the Moving Defendants violated other
provisions of ERISA, and further that the equitable relief he
seeks is to enforce Article IX of the Fund's Pension Plan (which
requires an employer to pay withdrawal liability in accordance
with the statute.[4]

Defendants argue in reply that the Article IX of the Plan
only obligates the employer, which does not include the Moving

---

[4] Article IX, Section D governs payment of withdrawal
liability, and requires an employer that has been assessed
withdrawal liability to pay that liability, even if the employer
contests the assessment.  Pl.'s Br. Ex. A at 45.  While the Plan
document cited here was not attached to the Amended Complaint,
Plaintiff suggests, and Defendants do not dispute, that the Court
can take note of its provisions as it is a "public document."

Defendants.  However, the Court finds Defendant's argument irrelevant as it has already determined that Plaintiff has adequately stated a claim for a violation by the Moving Defendants of 29 U.S.C. § 1392(c).  Thus, the Court finds that § 1132(a)(3) provides Plaintiff with a cause of action to seek equitable relief to remedy that alleged violation.

As to Defendants' second argument, that Plaintiff fails to adequately plead the elements of the equitable relief he seeks, Plaintiff responds only to his claim for a constructive trust. Plaintiff does not argue that he has adequately plead the five elements identified by Defendants as being necessary to state a claim for equitable subrogation.  See Tudor Dev. Grp. v. United States Fidelity & Guar. Co., 968 F.2d 357, 361 (3d Cir. 1992) (citing Pennsylvania law).[5]  The Court agrees with Defendants that Plaintiff has not alleged all five of these elements, and Plaintiff has not argued that Tudor's elements are inapplicable in this case.  Thus, the Court will grant Defendants' motion to dismiss with regard to Plaintiff's equitable subrogation claim.

However, as to the adequacy of Plaintiff's claim for the imposition of a constructive trust, the Court finds that

---

[5] The elements identified are "(1) the claimant paid the creditor to protect his own interests; (2) the claimant did not act as a volunteer; (3) the claimant was not primarily liable for the debt; (4) the entire debt has been satisfied; and (5) allowing subrogation will not cause injustice to the rights of others."  Tudor Dev. Grp. at 361.

Plaintiff has adequately alleged this claim.  Defendants argue
that, to state a claim for the imposition of a constructive
trust, Plaintiff is required to specifically trace the particular
assets to be placed in trust to specific funds or assets in
Defendants' possession.  The Court finds that Plaintiff has
sufficiently alleged the necessary elements of this claim.
Plaintiff has alleged that the particular assets he seeks to be
held in trust are separate and identifiable and are still in the
possession of the Defendants.  To the extent that Defendants
argue that Plaintiff must, at the pleading stage, specifically
allege the particular location of such assets and identify the
specific bank account where such funds are held, the Court
disagrees, finding no support in the cases cited by Defendant.

Toy v. Plumbers & Pipefitters Local Union No. 74 Pension
Plan, 317 F. App'x 169 (3d Cir. 2009) merely states that a claim
for constructive trust is not sufficiently alleged when a
plaintiff makes simple "demands for monetary compensation that
are not addressed to a particular fund" because "[s]uch demands
constitute legal, rather than equitable, remedies." Id. at 171.
Similarly, Great-West Life & Annuity Ins. Co. v. Knudson, 534
U.S. 204, 213 (2002) states that the imposition of a constructive
trust under § 1132(a)(3) is permissible when Plaintiff has
alleged "money or property identified as belonging in good
conscience to the plaintiff [that] could clearly be traced to

29

particular funds or property in the defendant's possession." <u>Id.</u>
These cases, therefore, stand for the proposition that a
plaintiff seeks equitable relief sufficient to state a claim
under § 1132(a)(3) provided that the plaintiff alleges the
existence of a fund where the specific assets alleged to belong
to the plaintiff can be found, as opposed to merely seeking cash
damages in the guise of equitable relief.

Plaintiff has adequately alleged that he seeks to recover
the money that 20th Century Refuse possessed at the time of the
assessment of withdrawal liability that the Moving Defendants
subsequently converted into personal accounts to prevent the
payment of such liability.  Plaintiff has further alleged that
such funds are still in the possession of these Defendants.  The
Court finds these allegations to adequately state a claim for
constructive trust under § 1132(a)(3).  The Court will deny
Defendants' motion to dismiss Plaintiff's Count IV as to the
imposition of a constructive trust, but will grant Defendants'
motion to dismiss Count IV as to the claim for equitable
subrogation.

## IV.  CONCLUSION

For the reasons stated above, the Court concludes that
Plaintiff has sufficiently alleged a cause of action to recover
funds transferred with the intent to evade or avoid withdrawal

30

liability pursuant to 29 U.S.C. § 1392(c).  The Court similarly concludes that Plaintiff has sufficiently alleged a cause of action to pursue a constructive trust pursuant to 29 U.S.C. § 1132(a)(3).  The Court will, therefore, deny Defendants' motion to dismiss Count III and Count IV as to those claims.  However, the Court has also concluded that Plaintiff has failed to state a claim for breach of fiduciary duty in Count II because Plaintiff has not alleged that Defendants exercised authority or control over any plan assets.  Consequently, the Court will grant Defendants' motion to dismiss as to Count II of the Amended Complaint.  The Court will also grant Defendants' motion to dismiss as to Plaintiff's claim for equitable subrogation in Count IV.  The accompanying Order will be entered.


**December 22, 2011**                     **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                              United States District Judge